```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/06/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                    :
AAR ALLEN SERVICES INC.,                                            :
                                                                    :
                                  Plaintiff,                        :           13 Civ. 3241 (JMF)
                                                                    :
            -v-                                                     :           OPINION AND ORDER
                                                                    :
FEIL 747 ZECKENDORF BLVD LLC,                                       :
                                                                    :
                                  Defendant.                        :
                                                                    :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       AAR Allen Services Inc. (along with its parent company, "AAR") sues Feil 747

Zeckendorf Blvd LLC ("Feil") to enforce the terms of a lease providing AAR with an option to

purchase the property covered by the lease, located at 747 Zeckendorf Boulevard, Garden City,

New York (the "Garden City Property").  The material facts are undisputed; the parties' dispute

centers instead on whether, under the terms of the lease, AAR's right of first refusal to the

purchase the Garden City Property was triggered.  For the reasons discussed below, the Court

agrees with Feil that it was not.  Accordingly, although only AAR moves for summary judgment

under Rule 56 of the Federal Rules of Civil Procedure, Feil is entitled to judgment as a matter of

law.  Thus, summary judgment is granted in Feil's favor, and the Complaint is dismissed.

## BACKGROUND

       The following facts, which are taken from the parties' Local Rule 56.1 Statements of

Material Facts and the evidence they submitted in connection with this motion, are uncontested

except where noted.

**A.      Factual Background**

In 1979, AAR purchased the Garden City Property, a nine-acre lot containing a 150,000 square-foot office and testing facility.  (Def. Feil 747 Zeckendorf Blvd LLC's Resp. Pl. AAR Allen Services Inc.'s Local Rule 56.1 Statement Material Facts (Docket No. 35) ("Def.'s 56.1 Resp.") ¶ 1).  AAR uses the facility to maintain and repair aircraft components, which is its primary line of business.  (*Id.* ¶¶ 2-3).  In 2003, AAR sold the Garden City Property to non-party iStar Garden City LLC for $14,800,000.  (*Id.* ¶ 6).  Pursuant to a contemporaneous contract (the "lease agreement"), AAR simultaneously leased back the Garden City Property for a twenty-year term on a "triple-net" basis (that is, where the lessee is legally responsible for paying all expenses associated with the property, including interest, property taxes, insurance, and maintenance costs, *see* Black's Law Dictionary 972, 1646 (9th ed. 2009)).  (*Id.* ¶ 7).  In 2008, iStar Garden City LLC assigned its interest in the lease agreement to Defendant Feil.  (*Id.* ¶ 13).

**B.      The Lease Agreement**

Under the terms of the lease agreement, AAR secured the right, if certain conditions were met, to repurchase the Garden City Property after ten years of the twenty-year lease period expired.  That right was established by Paragraph 30 of the lease agreement, which reads, in relevant part, as follows:

> (a) From August 1, 2012 through October 31, 2012 ("ROFR Period") and so long as no Event of Default then exists . . . , Tenant shall have a right of first refusal to purchase the Premises upon the terms and conditions set forth in this paragraph 30.  During the ROFR Period Landlord shall not sell or agree to sell the Premises without first complying with this paragraph 30.

> (b) During the ROFR Period, if Landlord receives an offer to sell the Premises to a Person that is *not a Landlord Affiliate or an Affiliate of Tenant or Guarantor* which Landlord desires to accept, Landlord shall notify ("ROFR Notice") Tenant in writing of such event.  Landlord agrees that if Landlord receives such an offer to sell the Premises during the ROFR period for a purchase price of $16,280,000.00 or greater on an all-cash basis, Landlord shall agree to

accept such offer solely for purposes of this paragraph 30 and complying with the provisions of this paragraph 30. The date such notice is given is herein called the "ROFR Notice Date". The ROFR Notice shall state that Landlord intends to sell the Premises to a Person that is not a Landlord Affiliate or an Affiliate of Tenant or Guarantor, for the specified price in such offer ("ROFR Notice Price") on an all-cash basis. Tenant shall have the right, at its option, to make an offer ("Tenant's ROFR Offer") to purchase the Premises in accordance with paragraph 29 on November 1, 2013 (notwithstanding any other proposed closing date in any offer referenced in the ROFR Notice) for the ROFR Notice Price, which offer shall be an all cash offer.

(Pl.'s Local Rule 56.1 Statement Material Facts (Docket No. 28) ("Pl.'s 56.1 Statement"), Ex. 2 ("Lease Agreement") ¶ 30 (emphasis added and emphasis omitted); *see also* Def.'s 56.1 Resp. ¶ 10). In simple terms, the provision created a "right of first refusal" that arose approximately halfway through the duration of the twenty-year lease, but only for three months. Specifically, if Feil received an offer during that window to purchase the property for more than $16,180,000, and if that offer did not come — to the extent relevant here — from an "affiliate" of AAR, then AAR had the option to purchase the property on an all-cash basis for the amount of the offer.

As defined in the lease agreement, "'[a]ffiliates' means Persons (other than individuals), controlled by, controlling, or under common control" with the tenant. (Lease Agreement ¶ 1; Def.'s 56.1 Resp. ¶ 17). "Control," in turn, is defined as "the possession directly or indirectly of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, *by contracts or otherwise*." (Lease Agreement ¶ 1 (emphasis added); Def.'s 56.1 Resp. ¶ 19).

## C. The Alleged Purchase Offer

On January 27, 2012, AAR entered into an agreement with Jones Lang LaSalle — "a financial and professional services firm specializing in commercial real estate services and investment management" — "to provide advisory services" related to AAR's real estate holdings. (Def.'s 56.1 Resp. ¶¶ 14, 21). As part of those advisory services, AAR asked Jones

Lang LaSalle to assist it in reacquiring the Garden City Property, and Jones Lang LaSalle agreed to do so.  (*Id.* ¶¶ 22, 24).  In order to ensure that AAR paid the lowest possible price, AAR and Jones Lang LaSalle agreed to have the latter firm offer to purchase the Garden City Property for exactly $16,280,000, the amount specified in Paragraph 30(b) of the lease agreement.  (*Id.* ¶ 25). AAR agreed to pay Jones Lang LaSalle a $365,000 "advisory fee upon closing" if AAR successfully purchased the property.  (*Id.* ¶ 26; *see also* Pl.'s 56.1 Statement, Ex. 4, at 3). On August 15, 2012, after obtaining AAR's approval to do so, Jones Lang LaSalle submitted a letter to Feil that purported to be a "Purchase Offer" setting out the "basic terms and conditions under which Jones Lang LaSalle or its assignees . . . would agree to purchase" the Garden City Property for $16,280,000 payable in cash.  (Pl.'s 56.1 Statement, Ex. 5, at 1; Decl. Michael J. Firestone Supp. Def. Feil Zeckendorf Blvd LLC's Mem. Law Opp'n Pl. AAR Allen Services Inc.'s Mot. Summ. J. (Docket No. 33) ("Firestone Decl."), Ex. B ("Rotter Dep."), at 29:9-11, 29:24-30:2; *id.*, Ex. C ("Westwood-Booth Dep."), at 128:12-15; *id.*, Ex. A ("Hara Dep."), at 24:7-10; *id.*, Ex. K).

On August 29, 2012, AAR purported to exercise its right of first refusal to purchase the Garden City Property.  (Pl.'s 56.1 Statement, Ex. 6; *see also* Def.'s 56.1 Resp. ¶ 35).  On September 10, 2012, Feil rejected AAR's purchase offer.  (*Id.*, Ex. 7; *see also* Def.'s 56.1 Resp. ¶ 36).  Interestingly, shortly after Feil rejected the purported purchase offer, Jones Lang LaSalle devised a "script" for a key AAR executive to follow when speaking with representatives of Feil. (Firestone Decl., Ex. M; *accord* Pl.'s Resp. Def.'s Local Rule 56.1 Statement Add'l Material Facts ("Pl.'s 56.1 Resp.") (Docket No. 37-1) ¶ 48).  The script suggested that AAR falsely represent that it was not involved in, or even aware of, Jones Lang LaSalle's purchase offer — specifically, that AAR learned of the purchase offer only because Jones Lang LaSalle had

contacted AAR about the latter "surrendering its leasehold."  (Firestone Decl., Ex. M).  The

script also recommended that AAR "steer clear of" mentioning "[t]he meaning of control in the

document" or "[t]he meaning of affiliate in the document."  (*Id.*).  AAR does not dispute that

Jones Lang LaSalle sent the script or that it received the script, but it submits evidence tending to

show that it did not discuss or rely on the Jones Lang LaSalle script.  (Pl.'s 56.1 Resp. ¶ 48).

## LEGAL STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

2012) (per curiam).  An issue of fact qualifies as genuine if the "evidence is such that a

reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

To avoid summary judgment, a party must advance more than a "scintilla of evidence,"

*Anderson,* 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  "In a contract dispute a motion for summary judgment may be granted only where the

agreement's language is unambiguous and conveys a definite meaning."  *Sayers v. Rochester*

*Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993).

It is well established that, in considering a motion for summary judgment, a court may

grant summary judgment in favor of the non-moving party even without a formal cross-motion if

"there are no genuine issues of material fact" and "the law is on the side of the non-moving

party."  *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997).  "Summary

judgment may be granted to the non-moving party in such circumstances so long as the moving

party has had an adequate opportunity to come forward with all of its evidence." *Id.* "Notice to

the moving party of the intention to grant summary judgment in favor of the non-moving party is

not required . . . where summary judgment is granted to the non-moving party on an issue which

has been fully raised by the moving party." *Id.* (citing *Coach Leatherware Co. v. AnnTaylor,

Inc.*, 933 F.2d 162, 167 (2d Cir. 1991); *see also Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97

Civ. 6308 (DC), 1999 WL 294806, at *2 n.2 (S.D.N.Y. May 11, 1999).

## DISCUSSION

The parties' dispute turns on whether Jones Lang LaSalle qualifies as an "affiliate" of

AAR for purposes of Paragraph 30.[1]  If it does, then AAR's right of first refusal was not

triggered because the conditions precedent to that right were not met; if it does not (and the other

requirements set forth in Paragraph 30 were met), then AAR's right of first refusal was triggered,

and Feil was obligated to sell the Garden City Property to AAR for the offered price.  Naturally,

Defendant argues that Jones Lang LaSalle was an "affiliate" of AAR on the alternative grounds

that Jones Lang LaSalle was either an agent of AAR (Def. Feil 747 Zeckendorf Blvd LLC's

Mem. Law Opp'n Pl. AAR Allen Services Inc.'s Mot. Summ. J. ("Def.'s Mem.") (Docket No.

31) 14 n.6) or controlled by AAR through the January 27, 2012 contract (*id.* 13-16).  By contrast,

Plaintiff argues that Jones Lang LaSalle was neither controlled by, nor an agent of, AAR (Pl.'s

Mem. Supp. Rule 56 Mot. Summ. J. ("Pl.'s Mem.") (Docket No. 27) 2-4).

The analysis begins with the text of the contract because, under New York law (which the

parties agree governs the lease agreement), "a court must give full effect to unambiguous

---

[1]     The parties also dispute whether the August 14, 2012 letter from Jones Lang LaSalle to
Feil constituted a purchase offer within the meaning of Paragraph 30.  (*Compare* Def.'s Mem.
18-21 *with* Pl.'s Mem. 7-9).  Although AAR makes a forceful argument that it did, the Court
need not reach the issue because, even if the letter did constitute a purchase offer, it did not
trigger the right of first refusal for the reasons set forth below.

contract terms." *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir.

2012). That is, neither extrinsic evidence nor the parties' subjective intent operates to vary the

terms of an unambiguous contract. *Id.* Moreover, it is a well-established principle of New York

contract law that "[a] contract should not be interpreted to produce a result that is

absurd, commercially unreasonable[,] or contrary to the reasonable expectations of the parties."

*In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (1st Dep't 2003) (internal citations omitted).

Put slightly differently, "the meaning of particular language found in [a contract] should be

examined 'in light of the business purposes sought to be achieved by the parties and the plain

meaning of the words chosen by them to effect those purposes.'" *Newmont Mines Ltd. v.*

*Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (quoting *Champion Int'l Corp. v.*

*Continental Cas. Co.*, 546 F.2d 502, 505 (2d Cir. 1976)). Finally, "[w]hether contract language

is ambiguous is a question of law that is resolved by reference to the contract alone." *O'Neil v.*

*Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 58-59 (2d Cir. 1994) (internal

quotation marks omitted).

  Applying those principles to the undisputed facts of this case, the Court concludes that

Jones Lang LaSalle was an "affiliate" of AAR. Paragraph 30 of the lease agreement, along with

its related definitions, was plainly drafted to prevent just the sort of gamesmanship AAR

attempted in this case. Indeed, the obvious reason to include such a clause in a long-term lease

agreement is to prevent one counterparty from making a straw-man offer and effectively holding

a call option on the property at a below-market price. Consistent with that interpretation, the

lease agreement defines "affiliate" in capacious terms: party A is an affiliate of party B if it has

"the power to direct or cause the direction of the management and policies of [party B], whether

through the ownership of voting securities, *by contracts or otherwise*." (Lease Agreement ¶ 1

(emphasis added)).  The January 27, 2012 side-agreement between AAR and Jones Lang LaSalle gave AAR that measure of control because it effectively required Jones Lang LaSalle to do exactly what AAR wanted it to do: namely, make a purchase offer for the Garden City Property. That this measure of control came through positive rather than negative reinforcement — *i.e.*, a benefit for complying rather than a punishment for breach — is irrelevant for purposes of the lease agreement, which also includes as "affiliates" entities "control[led] . . . otherwise."  (*Id.*).[2]

This conclusion is consistent with case law interpreting similar contracts.  In *Telenor Mobile Communications AS v. Storm LLC*, 587 F. Supp. 2d 594, 605 (S.D.N.Y. 2008), the court interpreted a similar "control" provision broadly and noted that "[c]ontractual arrangements, such as . . . agency or other commercial contracts, can allow one entity to wield significant power over another."  Such was the case here: Jones Lang LaSalle had only to submit a purchase offer for the Garden City Property in order to collect $360,000.  Jones Lang LaSalle effectively bore no risk in the transaction whatsoever.[3]  Thus, the Court concludes that Jones Lang LaSalle

---

[2]     Plaintiff relies on *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976), for the proposition that "[c]ontrol . . . means the ability to participate in the day-to-day affairs of the corporations or to direct the corporation's officers in setting corporate policies."  (Pl.'s Reply Mem. Supp. Rule 56 Mot. Summ. J. (Docket No. 37) 3).  But *Corr* itself demonstrates that the concept of control "is not a narrow one." 543 F.2d at 1050.  Moreover, in the context of commercial agreements — as opposed to the related but conceptually distinct statutory context of securities fraud — "control" has been interpreted even more broadly.  *See, e.g.*, *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 606 (S.D.N.Y. 2008) (interpreting "control," in the context of a nearly identical provision, to prohibit one corporation from using contracts to render another corporation "its puppet").

[3]     Indeed, although the fact is legally irrelevant in light of the lease agreement's unambiguity, and although Plaintiff disputes the characterization, Jones Lang LaSalle officers testified that they understood that AAR — not Jones Lang LaSalle — would be purchasing the property.  (*See* Local Rule 56.1 Statement Add'l Material Facts Supp. Def. Feil 747 Zeckendorf Blvd LLC's Mem. Law Opp'n Pl. AAR Allen Services Inc.'s Mot. Summ. J. (Docket No. 32) ("Def.'s 56.1 Statement") ¶ 21; *see also* Rotter Dep., at 33:20-23).  In fact, Jones Lang LaSalle Managing Director Bruce Westwood-Booth testified that Jones Lang LaSalle was acting as a "straw man . . . on AAR's behalf."  (Firestone Decl., Ex. G; *cf.* Pl.'s 56.1 Resp. ¶ 19 ("Mr. Westwood-Both [sic] testified that by 'straw man,' he meant that Jones Lang LaSalle was acting

was, for purposes of the lease agreement, AAR's affiliate — either by contract or, in the alternative, "otherwise."  Accordingly, the contract's terms are unambiguous and support Defendant's interpretation, and, as a result, Defendant is entitled to judgment as a matter of law.

Even if the lease agreement's plain language were initially ambiguous, longstanding principles of contract interpretation would call for the same result.  Under the "four-corners rule," facially ambiguous contracts can be found unambiguous as a matter of law where there is only one "practical interpretation to the language employed and the parties' reasonable expectations."  *Berkshire Bank v. Tedeschi*, No 11 Civ. 767 (LEK/CFH), 2013 WL 1291851, at *8 (N.D.N.Y. Mar. 27, 2013) (internal quotation marks omitted).  Moreover, it is black-letter contract law that "a construction of a contract that would give one party an unfair and unreasonable advantage over the other, or that would place one party at the mercy of the other, should, if at all possible, be avoided."  *ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC*, 943 N.Y.S.2d 493, 498 (1st Dep't 2012).  Here, Plaintiff's preferred reading would indeed give it an unfair advantage, as it would effectively allow Plaintiff to employ trickery and deceit to obtain a result for which it did not bargain in the first instance.  The world of complex commercial transactions, like politics, may not be "beanbag," *see, e.g.*, *Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1219 & n.2 (10th Cir. 2008) (attributing the aphorism "Politics ain't beanbag" to Chicago humorist Finley Peter Dunne) — but neither is it Three-Card Monte.

## CONCLUSION

For the reasons stated above, the Court concludes that the lease agreement is unambiguous and that Jones Lang LaSalle was an "affiliate" within the meaning of Paragraph

---

as AAR's 'facilitator.'")).  Adding credibility to those understandings is the fact that Jones Lang LaSalle never sought internal approval to allocate funds to purchase the Garden City Property. (Def.'s 56.1 Statement ¶ 22; *see also id.*, Ex. C, at 112:21-113:6).

30.  Accordingly, although Defendant has not moved for summary judgment, the Court

nevertheless grants it such relief, as Plaintiff "has had an adequate opportunity to come forward

with all of its evidence," *Orix Credit Alliance*, 965 F. Supp. at 484, and the undisputed evidence

reveals that Defendant is entitled to judgment as a matter of law.

      The Clerk of Court is directed to close the case.

      SO ORDERED.

Dated: May 6, 2014
      New York, New York

                                                 JESSE M. FURMAN
                                         United States District Judge